UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN H. MERRITT, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | )   No. 4:09CV01068 AGF |
| | ) |
| DON ROPER, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the petition of Missouri state prisoner John H. Merritt for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner was convicted of two counts of forcible rape, five counts of statutory sodomy in the first degree, and two counts of child molestation.  Two sisters were the victims, T.R. (age 8) and K.C. (age 13). Petitioner was sentenced to a total of two terms of life in prison plus 30 years.

For federal habeas relief, Petitioner asserts the following three grounds:

(1) his constitutional right to a jury trial was violated due to the trial court's failure to conduct an inquiry of Petitioner to ensure that his waiver of a jury trial was knowing and voluntary;

(2) he was denied the right to present a complete defense and to a fair trial due to the trial court's preclusion of Petitioner's evidence that T.R. had previously been molested before the age of five, giving her an alternative source of knowledge about adult sexual acts; and

(3) defense counsel rendered ineffective assistance by waiving Petitioner's right to a jury trial without Petitioner's consent and understanding.

Respondent argues that federal habeas relief must be denied because the state courts' adjudication of these claims was not factually or legally unreasonable.  The Court

concludes that a hearing is necessary to resolve the claims related to Petitioner's waiver of his right to a jury trial.

## BACKGROUND

**Indictment and Trial**

Petitioner was charged by information on October 7, 2003, with 98 counts of forcible rape, statutory sodomy and child molestation. On May 6, 2005, Petitioner's counsel submitted to the court a written waiver of trial by jury, signed by counsel but not by Petitioner. (Resp. Ex. B at 50.) On May 11, 2005, the state filed an amended information charging Plaintiff with two counts of forcible rape, five counts of statutory sodomy and two counts of child molestation, all for acts alleged to have occurred against T.R. and K.C. In Petitioner's presence on May 11, 2005, the trial court announced, "[t]he matter comes on us for bench trial." Petitioner voiced no objection to proceeding without a jury. *Id.* at 61.

Also on May 11, 2005, the trial court addressed the state's motion in limine to preclude Petitioner's evidence that T.R. had previously been molested before the age of five. The state argued that the Missouri rape shield statute, Mo. Rev. Stat. § 491.015, specifically omitted evidence of prior sexual contact except to show an alternate source of pregnancy, disease, or semen, none of which exceptions applied in this case. (Resp. Ex. A at 67.) Defense counsel argued that if the state were to introduce medical evidence of a relaxed sphincter, it would be unfair to prohibit defense counsel from presenting evidence that another person or cause was responsible for the condition. The state explained that it

had no intention to introduce any evidence of physical injury to either victim.  The trial court sustained the state's motion in limine.  *Id*. at 68.

At trial, K.C. (then age 15), T.R. (then age 10), Marsha Cain (K.C. and T.R.'s mother), a forensic examiner, and a detective testified for the state.  Petitioner's mother, Mary Merritt, was the sole witness for Petitioner.

Marsha Cain testified that she moved into her grandmother's (Mary Merritt's) house in Sikeston, Missouri in 1999 along with her three children: K.C., who was ten years old; T.R., who was five years old; and R.C., who was one year old.  Ms. Cain testified that Petitioner, who was her uncle, also lived at the home and he was sometimes home alone with the children.

K.C. testified that Petitioner required her to engage in sexual acts if she wanted to use his computer or watch his television.  She described in graphic detail various sexual acts that Petitioner compelled her to perform with him, despite her attempts to resist him.  K.C. testified that Petitioner raped her for the first time in the fall of 2000, and many times thereafter.  T.R. testified that Petitioner engaged in sexual acts with her as well, and that he showed T.R. his penis and forced her to perform oral sex on him many times, and had once attempted to perform anal sex on her.

Defense counsel sought to introduce evidence that another man had molested T.R. when she was five years old, arguing that this was relevant to show her knowledge of sexual matters.  The court stated that its ruling on the state's above-noted motion in limine remained the same, and excluded the evidence.

The forensic examiner testified that she conducted a videotaped interview with T.R., and the tape was played in court.  The detective testified that he conducted two interviews, one with K.C. in the presence of K.C.'s mother; and one with T.R. in the presence of T.R.'s mother and father.  The detective transcribed the interviews immediately after their conclusions, and the parents present during the interview read and signed the transcripts to confirm their accuracy.  The detective testified in detail about the sexual acts that K.C. and T.R. alleged had occurred between them and Petitioner.  The detective further testified that based on these interviews, he arrested Petitioner, read him his *Miranda* warnings, and asked him about the allegations of the victims.  The detective testified that Petitioner confessed to the crimes.

Petitioner's mother, Mary Merritt, testified that she never left Petitioner alone with K.C. and T.R., that Petitioner's bedroom door was always open when the children were in his room, that it was not possible that Petitioner had committed the charged acts, and that K.C. and T.R. had always enjoyed visiting her home.

Based on the evidence, the trial judge found Petitioner guilty of all nine counts charged in the amended information.  At sentencing on June 27, 2005, the prosecutor stated, in Petitioner's presence, as follows:  "Your honor, when Mr. Merritt agreed to waive his right to trial by jury and submit to trial by the Court, the state agreed to cap its recommendation at life plus 15."  (Resp. Ex. A at 273.)  Defense counsel confirmed the existence of the agreement and argued for leniency based in part on the fact that Petitioner

waived his right to a jury trial and thus spared the victims from having to go through a public jury trial.  The court then asked Petitioner if there was anything he wanted to tell the judge, to which Petitioner responded, "No, I allowed my lawyers to speak on my behalf."  *Id.* at 276.  As noted above, Petitioner was sentenced to a total of two terms of life in prison plus 30 years.

**Direct Appeal**

Petitioner raised two points on direct appeal: (1) that the trial court plainly erred in proceeding to trial without a jury and without ascertaining that Petitioner's waiver of a jury was voluntarily and knowingly entered, in violation of Petitioner's constitutional rights, as the record did not disclose anywhere that Petitioner ever had an understanding of the ramifications of waiving a jury trial;  and (2) that the trial court's exclusion of evidence that T.R. had been molested before the age of five violated Petitioner's constitutional rights to present a defense and to due process because the evidence was relevant to show an alternative source of T.M.'s knowledge of adult sexual acts.  (Resp. Ex. C.)

The Missouri Court of Appeals rejected Petitioner's first point, noting that Petitioner did not argue that he was not informed by defense counsel of the right to a jury trial, that he did not understand the right, that he did not voluntarily waive the right, or that he would have asserted the right if questioned by the judge.  The appellate court further stated that Petitioner did not refute that defense counsel had bargained with the state to cap Petitioner's punishment in exchange for his jury-trial waiver.  The appellate court

noted that Petitioner did not object at trial or at sentencing to the non-jury trial and thus his claim was not preserved for review.  The appellate court declined to review the claim for plain error under Missouri Supreme Court Rule 30.20, finding no extraordinary circumstances to justify such review.

With regard to Petitioner's second point on appeal, the appellate court noted the different arguments advanced by Petitioner at the hearing on the motion in limine, and at trial and on appeal.  The appellate court stated that the Missouri rape shield statute was designed to protect victims and permitted evidence of a victim's prior sexual conduct only if the evidence fell within one of the four statutory exceptions and the trial court found the evidence relevant as to a material fact or issue, and that Petitioner did not argue that the evidence fell into any of the enumerated exceptions.  The appellate court stated that the state did not try to show that Petitioner's wrongful conduct was the sole source of knowledge by T.M. of adult sexual acts and that such knowledge was not a material issue in the case.  Rather, Petitioner's guilt was proven by the victims' testimony about Petitioner's acts, and Petitioner's confession.

**State Postconviction Proceedings**

The only claim raised by Petitioner on appeal from the denial of postconviction relief was that defense counsel was constitutionally ineffective for failing to ensure that Petitioner's waiver of a jury trial was voluntarily and knowingly entered.  Petitioner asserted in his amended postconviction motion that his "waiver of a jury trial was not voluntary" and that a reasonably competent attorney would have made a record of this

issue.  He continued that there was "a reasonable probability that had trial counsel made such a record, the Court's inquiry would have revealed [Petitioner's] desire for a jury trial and the waiver of this quintessential right would not have occurred against [Petitioner's] will."  (Resp. Ex. H at 24.)  Petitioner alleged that at an evidentiary hearing he would testify "that he wanted a jury trial and had requested one, and continues to want one now."  *Id*. at 27.  Petitioner also complained that defense counsel did not properly preserve the issue for appellate review.  *Id*.  Petitioner specifically asked for an evidentiary hearing "so that he may prove his claims." *Id*. at 32.

The motion court (the same judge who presided at trial) did not hold an evidentiary hearing, finding that the claim was refuted by the record.  The court stated that it was obvious to the court that Petitioner knew and understood that the case was being tried to the court and not a jury and that Petitioner "was in no way unaware or this came as no surprise."  The court concluded that the decision to waive a jury trial was Petitioner's, "made knowingly and intelligently."  (Resp. Ex. H at 43.)

In affirming this decision, the Missouri Court of Appeals stated that the only error Petitioner attributed to defense counsel was the failure to make a record regarding Petitioner's waiver.  However, explained the appellate court, Missouri Supreme Court Rule 27.01 did not require in-court questioning of a defendant regarding a jury trial waiver, but rather only that the waiver take place in open court and be entered on the record, and these requirements had been met in this case.  The appellate court further stated that Petitioner failed to plead any facts showing that defense counsel had reason to

believe Petitioner did not understand the proceedings. The appellate court commented that Petitioner's allegation that he "wanted a jury trial and has requested one" failed to identify where and when Petitioner had voiced his wishes or made his request. According to the Missouri Court of Appeals, Petitioner did not allege that he did not understand his right to a jury trial, or that defense counsel "unilaterally filed the written waiver of jury trial without first discussing the waiver with [Petitioner]." (Resp. Ex. K.)

In addition, the state appellate court held that claims based on defense counsel's failure adequately to preserve issues for appeal were not cognizable under Rule 29.15. The court concluded that because Petitioner failed to show that defense counsel's conduct fell below an objective standard of reasonableness, it was not necessary for the court to address Petitioner's argument that he was prejudiced by defense counsel's failure to make a record of his jury trial waiver. *Id.*

## DISCUSSION

**Standard of Review**

> Under the Antiterrorism and Effective Death Penalty Act of 1996,
>
> [f]ederal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

*Harrington v. Richter*, 131 S. Ct. 770, 785 (2011).

"For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" *Id.* (quoting *Williams*, 529 U.S. at 410). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision." *Id.* at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87; *see also Hardy v. Cross*, 132 S. Ct. 490, 491 (2011) (AEDPA "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.") (citation omitted).

**Petitioner's Jury Trial Waiver**

As set forth above, Petitioner argues in his first claim for habeas relief that his constitutional right to a jury trial was violated due to the trial court's failure to conduct an inquiry of Petitioner to ensure that his waiver of a jury trial was knowing and voluntary. In his third claim for relief, Petitioner argues that defense counsel rendered ineffective assistance by waiving Petitioner's right to a jury trial without Petitioner's consent and understanding.

Respondent argues that Petitioner's first claim is subject to plain error review for "manifest injustice," and that the claim fails because the trial court was not

constitutionally required to conduct an examination of Petitioner on the record to ensure that the waiver of a jury trial was knowing and voluntary.  Respondent argues that Petitioner's third claim fares no better, because the Missouri Court of Appeals' adjudication of that claim was reasonable.  While the Court agrees that Petitioner's first claim is subject to plain error review for "manifest injustice," *see Shelton v. Purkett*, 563 F.3d 404, 408 (8th Cir. 2009),[1] the Court cannot agree with Respondent's argument that Petitioner's claims necessarily fail under that standard of review, based upon the record now before the Court.

> The Supreme Court has explained that a jury trial is fundamental to the American scheme of justice, and that the defendant has the ultimate authority to make fundamental decisions regarding his case, such as whether to waive a jury.  The right includes . . . as its most important element, the right to have the jury, rather than the judge, reach the requisite finding of "guilty."

*Miller v. Dormire*, 310 F.3d 600, 603 (8th Cir. 2002) (citations omitted).  To be valid, the waiver must be voluntary, knowing, and intelligent.  *See id.*

It is true that a colloquy between the trial court and a criminal defendant, ascertaining the voluntariness of a waiver of a jury trial, is not constitutionally mandated; indeed, the Constitution does not require that a jury-trial waiver take any particular form. *Fitzgerald v. Withrow*, 292 F.3d 500, 504 (6th Cir. 2002) (cited with approval in *United*

---

[1] The panel in *Shelton* cites some contrary authority in the Eighth Circuit pursuant to which plain error review of a claim by a state court does not cure a procedural default. *Id*. at 408.  Here, Respondent does not argue that the jury trial waiver issue should not be reviewed at all by this Court, nor does the Court believe that it is precluded from doing so.

*States v. Griffin*, 394 F. App'x 349, 351 (8th Cir. 2010)). However, the Constitution does require that the waiver itself be voluntary, knowing, and intelligent.

The state appellate court's statement that Petitioner did not allege that he did not understand his right to a jury trial is contrary to the record. As set forth above, Petitioner did in fact allege in his amended post-conviction motion that his "waiver of a jury trial was not voluntary" and that there was "a reasonable probability that had trial counsel made [a proper record], the Court's inquiry would have revealed [Petitioner's] desire for a jury trial and the waiver of this quintessential right would not have occurred against [Petitioner's] will." (Resp. Ex. H at 24.) *See Miller*, 310 F.3d at 604 (holding that state court's finding that the habeas petitioner had validly waived his right to a jury trial was an unreasonable determination of the facts, under 28 U.S.C. § 2254(d)(2), and an unreasonable determination of the federal law as interpreted by the United States Supreme Court, under 28 U.S.C. § 2254(d)(1), where the record was devoid of any direct testimony from the petitioner regarding his consent to waive trial by jury).

It is true that Petitioner did not identify where and when he had voiced his wishes or made his request for a jury trial know. Nor did he allege that defense counsel did not discuss the matter with him. But these omissions do not establish that he knowingly waived his right to such a trial. The facts that Petitioner did not object to a bench trial as the trial proceeded, and that defense counsel and the prosecutor discussed, in Petitioner's presence, that the waiver was the result of a deal that capped the maximum punishment, also do not establish that Petitioner's waiver was voluntary, knowing, and intelligent.

The Court believes that this is one of those rare cases where the Court, as a federal habeas court, must conduct an evidentiary hearing to determine whether Petitioner made a valid waiver of his right to be tried by a jury.  If Petitioner's right to a jury trial was denied, the error would be structural in nature, not subject to harmless error analysis.  *See Miller*, 310 F.3d at 603.   An evidentiary hearing generally is not available to a petitioner who "failed to develop the factual basis of a claim in State court proceedings." § 2254(e)(2).  Here, however, the failure to develop the record in the state post-conviction proceeding was not Petitioner's fault, as the motion court denied his request for an evidentiary hearing.

**Exclusion of Evidence of Prior Molestation of Victim**

Petitioner's second claim for habeas relief is that his right to a complete defense was violated due to the preclusion of evidence that T.R. had previously been molested before the age of five.

The United States "Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense," such that a court may not "exclude competent, reliable evidence . . . central to the defendant's claim of innocence[,] . . . [i]n the absence of any valid state justification."  *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citation omitted).  There are limits on this right, however.  *Garcia v. Mathes*, 474 F.3d 1014, 1017-18 (8th Cir. 2007) (noting that a trial court may, without violating the constitution, exclude defense evidence that is repetitive, is only marginally relevant, or poses an undue risk of harassment, prejudice, or confusion of the issues) (citing *Holmes v. South*

*Carolina*, 547 U.S. 319, 326-27 (2006) ("[T]he Constitution . . . prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote.").

In *Michigan v. Lucas*, 500 U.S. 145 (1991), the Supreme Court applied these principles in the context of a state court's exclusion of evidence under the state's rape shield statue in a criminal trial.  The Court explained that a trial court must balance a state's interest in excluding certain evidence under a rape shield statute against a defendant's constitutionally protected interest in admitting that evidence, on a case-by-case basis, with neither interest being superior per se.  *Id.* at 152-53.

Upon review of the record, the Court concludes that the state courts' decisions here on this matter were not unreasonable.  Nothing in the state's case made the evidence proffered by Petitioner relevant.  *See Gagne v. Booker*, 680 F.3d 493, 517-18 (6th Cir. 2012) (holding that the state court's exclusion of a rape victim's prior sexual conduct was not objectively unreasonable even though evidence may have been relevant to the defendant's defense; and reversing district court's grant of habeas relief.)  In addition, the evidence of Petitioner's guilt was overwhelming rendering any error in the exclusion of the proffered evidence harmless.  *See Jeffries v. Nix*, 912 F.2d 982, 989 (8th Cir. 1990) (holding that the exclusion of evidence under state's rape shield law was at most harmless error where evidence of the petitioner's guilt was overwhelming); *Dittrich v. Woods*, 419 F. App'x 573, 578 (6th Cir. 2011) (same).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that an evidentiary hearing is set for **Wednesday, September 5, 2012, at 10:30 a.m.**, on the question of whether Petitioner's right to trial by jury was violated.

**IT IS FURTHER ORDERED** that Petitioner's counsel shall take the steps necessary to arrange Petitioner's presence at the hearing.

                                             *Audrey G. Fleissig*
                                             AUDREY G. FLEISSIG
                                             UNITED STATES DISTRICT JUDGE

Dated this 15th day of August 2012.