UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN H. MERRITT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 4:09CV01068 AGF |
| | ) | |
| TROY STEELE, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court, following an evidentiary hearing held on September 24, 2012, related to certain claims raised by Missouri state prisoner John H. Merritt in his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, federal habeas relief shall be denied.

Following a one-day bench trial in state court on May 11, 2005, Petitioner was convicted of two counts of forcible rape, five counts of statutory sodomy in the first degree, and two counts of child molestation, for which he was sentenced to a total of two life sentences and two sentences of 15 years. By Memorandum and Order dated August 15, 2012 (Doc. No. 14), this Court rejected all of Petitioner's claims for federal habeas relief with the exception of the claims that his constitutional right to a jury trial was violated due to the trial court's failure to conduct an inquiry of Petitioner to ensure that his waiver of a jury trial was knowing and voluntary; and the interrelated claim that defense counsel rendered ineffective assistance by waiving Petitioner's right to a jury trial without

Petitioner's consent and understanding. The Court concluded that an evidentiary hearing was necessary to resolve these claims, which are subject to plain error review for manifest injustice.

## BACKGROUND

Most of the following facts are set forth in the Court's Memorandum and Order of August 15, 2012; they are repeated here to facilitate a full discussion of the claims under consideration. Petitioner was arrested on July 10, 2003, and charged by information on October 7, 2003, with 98 counts of forcible rape, statutory sodomy and child molestation. He remained in custody from his arrest until his trial. Public Defenders Jennifer Booth and Christopher Davis represented Petitioner from at least one year prior to trial through the trial. On May 6, 2005, defense counsel submitted to the court a written waiver of trial by jury, signed by Davis but not by Petitioner. (Resp. Ex. B at 50.) On May 11, 2005, the day of trial, the state filed an amended information charging Petitioner with the nine counts of conviction noted above.

At the start of the trial, in Petitioner's presence, the trial court announced, "[t]he matter comes on us for bench trial." Petitioner voiced no objection to proceeding without a jury. *Id*. at 61. At sentencing on June 27, 2005, the prosecutor stated, in Petitioner's presence, as follows: "Your honor, when Mr. Merritt agreed to waive his right to trial by jury and submit to trial by the Court, the state agreed to cap its recommendation at life plus 15." (Resp. Ex. A at 273.) Defense counsel confirmed the existence of the agreement and argued for leniency based in part on the fact that Petitioner waived his right

to a jury trial and thus spared the victims from having to go through a public jury trial. The court then asked Petitioner if there was anything he wanted to tell the judge, to which Petitioner responded, "No, I allowed my lawyers to speak on my behalf." *Id*. at 276. As noted above, Petitioner was sentenced to a total of two terms of life in prison plus two 15 year terms.

One of the points Petitioner raised on direct appeal was that the trial court plainly erred in proceeding to trial without a jury and without ascertaining that Petitioner's waiver of a jury was voluntarily and knowingly entered, in violation of Petitioner's constitutional rights, as the record did not disclose anywhere that Petitioner ever had an understanding of the ramifications of waiving a jury trial. The Missouri Court of Appeals rejected Petitioner's first point, noting that Petitioner did not argue that he was not informed by defense counsel of the right to a jury trial, that he did not understand the right, that he did not voluntarily waive the right, or that he would have asserted the right if questioned by the judge. The appellate court further stated that Petitioner did not refute that defense counsel had bargained with the state to cap Petitioner's punishment in exchange for his jury-trial waiver. The appellate court noted that Petitioner did not object at trial or at sentencing to the non-jury trial and thus his claim was not preserved for review. The appellate court declined to review the claim for plain error under Missouri Supreme Court Rule 30.20, finding no extraordinary circumstances to justify such review.

The only claim raised by Petitioner on appeal from the denial of postconviction relief was that defense counsel was constitutionally ineffective for failing to ensure that

Petitioner's waiver of a jury trial was voluntarily and knowingly entered. Petitioner asserted in his amended postconviction motion that his "waiver of a jury trial was not voluntary" and that a reasonably competent attorney would have made a record of this issue. He continued that there was "a reasonable probability that had trial counsel made such a record, the Court's inquiry would have revealed [Petitioner's] desire for a jury trial and the waiver of this quintessential right would not have occurred against [Petitioner's] will." (Resp. Ex. H at 24.) Petitioner alleged that at an evidentiary hearing he would testify "that he wanted a jury trial and had requested one, and continues to want one now." *Id*. at 27. Petitioner also complained that defense counsel did not properly preserve the issue for appellate review. *Id*.

The motion court (the same judge who presided at trial) did not hold an evidentiary hearing, finding that the claim was refuted by the record. The court stated that it was obvious to the court that Petitioner knew and understood that the case was being tried to the court and not a jury and that Petitioner "was in no way unaware or this came as no surprise." The court concluded that the decision to waive a jury trial was Petitioner's, "made knowingly and intelligently." (Resp. Ex. H at 43.)

In affirming this decision, the Missouri Court of Appeals stated that the only error Petitioner attributed to defense counsel was the failure to make a record regarding Petitioner's waiver. However, explained the appellate court, Missouri Supreme Court Rule 27.01 did not require in-court questioning of a defendant regarding a jury trial

waiver, but rather only that the waiver take place in open court and be entered on the record, and these requirements had been met in this case. The appellate court further stated that Petitioner failed to plead any facts showing that defense counsel had reason to believe Petitioner did not understand the proceedings. The appellate court commented that Petitioner's allegation that he "wanted a jury trial and has requested one" failed to identify where and when Petitioner had voiced his wishes or made his request. According to the Missouri Court of Appeals, Petitioner did not allege that he did not understand his right to a jury trial, or that defense counsel "unilaterally filed the written waiver of jury trial without first discussing the waiver with [Petitioner]." (Resp. Ex. K.)

In addition, the state appellate court held that claims based on defense counsel's failure adequately to preserve issues for appeal were not cognizable under Rule 29.15. The court concluded that because Petitioner failed to show that defense counsel's conduct fell below an objective standard of reasonableness, it was not necessary for the court to address Petitioner's argument that he was prejudiced by defense counsel's failure to make a record of his jury trial waiver. *Id*.

### **TESTIMONY AT THE EVIDENTIARY HEARING**

In its Memorandum and Order dated August 15, 2012 (Doc. No. 14), this Court ordered that an evidentiary hearing be held on the question of whether Petitioner's right to trial by jury was violated. At the hearing, held on September 24, 2012, Petitioner and Davis testified. Petitioner testified that he met with his attorneys, Booth and Davis, approximately five or six times prior to trial. He testified that at the time, he carried

diagnoses of manic depression, post traumatic stress disorder, and bi-polar disorder, and that he was then taking Elavil for these problems. He testified that his counsel first approached him about waiving his right to a jury approximately two weeks before trial, telling him that if he did so, his sentence would be capped at 20 years. They advised him that if he did not agree, the prosecutor would likely seek a sentence of 50 years on each count. Petitioner testified that he told counsel he wanted a jury and that they tried to convince him that it would be better to proceed with a bench trial because that way the trial judge would be more favorably inclined toward him for his sparing the two young victims of his charged crimes the ordeal of a jury trial. Petitioner testified that he understood that if he waived his right to a jury, the maximum sentence he would receive would be a total of 20 years imprisonment, pursuant to an agreement with the prosecutor that the prosecutor would recommend such a maximum, and that the judge would follow the recommendation.

Upon questioning by his habeas counsel, Petitioner testified that the first time he heard about an agreement that the prosecutor would recommend life plus 15 years was at sentencing, and that he would not have waived his right to a jury in exchange for such a recommendation. Petitioner testified that during his discussion with counsel about a waiver of a jury, he understood that if he did not waive a jury, the prosecutor would ask for a sentence of 50 years' imprisonment on each count. He testified that the first time he saw the jury waiver form that was signed by Davis was after sentencing when he was in prison. He stated that at the time of his above-described discussion with counsel, he did

not understand that he had a constitutional right to a trial by jury. Petitioner testified that about one to two weeks before trial (after or near the time of his above discussion with counsel), his custodians stopped giving him his medication and that he told Booth about this.

Petitioner testified that he had another discussion with counsel about waiving a jury on the morning of trial, right before trial was to begin. Counsel took him to the jury deliberation room and again discussed the benefits of waiving a jury, and told Petitioner that if he did not do so, the prosecutor would ask for a sentence of 50 years' imprisonment on each count.

Petitioner acknowledged that during trial he did not object to proceeding without a jury, and explained that this was because he was confused and upset after counsel had taken him to the jury deliberation room, and did not which way was up or down. Counsel again asked Petitioner whether, had he known that his sentence would be two life terms plus two 15 year terms even after waiving his right to jury, he would have proceeded to trial with a jury. Petitioner responded that he would have proceeded with a jury.

On cross examination, Petitioner again testified that in the first discussion with counsel about waiving a jury (approximately two weeks before trial) he told them that he did not want to do so. He also testified that he did not know at the time that it was his decision alone whether or not to waive a jury and that his counsel did not tell him this. He believed it was something they would discuss. With respect to the discussion with counsel in the jury deliberation room on the morning of trial, Petitioner testified that he was sitting

in the courtroom, feeling strongly that he wanted a jury trial, which was why counsel took him to the jury deliberation room. He testified that counsel started on him about the 50 years per charge, that the prosecution would seek the maximum penalty, and that he would not get out of prison. He again testified that when they were done he was so confused that he did not know what to do.

Petitioner testified that he was confused because he had been off his medication for almost two weeks. Petitioner again acknowledged that neither during the trial nor at sentencing did he complain about not having a jury trial, explaining that he did not know he was supposed to do so on either of those occasions, and that at sentencing he was in a state of shock due to a letter from one of the victims that was read to the court.

Davis testified that he obtained his law degree in 1994, and had worked in the Missouri Public Defender's Office since 1996. In 2004 and 2005, Davis was supervisor in the office, and supervised Booth. He did not specifically recall his discussions with Petitioner regarding waiving a jury, but was sure he would have told Petitioner that it was Petitioner's decision whether to do so. Davis recalled that the case had little jury appeal due to the nature of the crimes, the credible and damaging deposition testimony of the victims, and other strong adverse evidence, including Petitioner's confession. He also testified, based upon his review of certain records on the night before the hearing, that in exchange for the waiver of a jury, the prosecutor agreed to dismiss several counts and to recommend a total sentence of no more than life plus 15 years.

Davis testified that he was sure he would not have filed the jury waiver form without having discussed the matter with Petitioner, because whether or not to waive a jury is one of the fundamental decisions a criminal defendant has to make. Counsel did not remember discussing with Petitioner on the day of trial the issue of a jury. Davis felt certain that it was Petitioner's decision to have a bench trial, and that he (Davis) had given Petitioner all the information he needed in order for that to be a knowing decision. Davis stated that although he did not specifically recall his conversation with Petitioner regarding the waiver of a jury, if Petitioner had shown any confusion, Davis was certain that he would have made sure it was all cleared up and that Petitioner understood the ramifications of waiving a jury before Davis actually filed the waiver form, because it was Petitioner's decision one way or the other. He did not see or recall any evidence of mental deficiency or inability to understand by Petitioner.

On cross examination, Davis reasserted that there was no way he would have ever waived a jury without his client's permission after discussing it fully with his client. David explained on redirect examination that at the time of Petitioner's trial, the jury waiver form used by the Public Defender's office did not require the signature of the defendant.

## **DISCUSSION**

As the Court stated in the Memorandum and Order of August 15, 2012,

> [The United States] Supreme Court has explained that a jury trial is fundamental to the American scheme of justice, and that the defendant has the ultimate authority to make fundamental decisions regarding his case,

> such as whether to waive a jury. The right includes . . . as its most important element, the right to have the jury, rather than the judge, reach the requisite finding of "guilty."

*Miller v. Dormire*, 310 F.3d 600, 603 (8th Cir. 2002) (citations omitted). To be valid, the waiver must be voluntary, knowing, and intelligent. *See id.*

This Court further noted that a colloquy between the trial court and a criminal defendant, ascertaining the voluntariness of a waiver of a jury trial, is not constitutionally mandated. Indeed, the Constitution does not require that a jury-trial waiver take any particular form. *Fitzgerald v. Withrow*, 292 F.3d 500, 504 (6th Cir. 2002) (cited with approval in *United States v. Griffin*, 394 F. App'x 349, 351 (8th Cir. 2010)). If Petitioner's right to a jury trial was denied, the error would be structural in nature, not subject to harmless error analysis. *See Miller*, 310 F.3d at 603.

Having heard the testimony at the evidentiary hearing, and having had the opportunity to observe the demeanor of the witnesses, the Court credits the testimony of Davis over that of Petitioner. Specifically, the Court finds that prior to filing the jury waiver form, Davis informed Petitioner that it was Petitioner's decision whether or not to waive his right to a jury trial, and gave Petitioner the information he needed to make an informed decision. The Court further finds that Davis, an experienced criminal attorney at the time of Petitioner's trial, had obtained Petitioner's agreement to waive his right to a jury trial before he filed the waiver form. *See United States v. Arredondo*, 349 F.3d 310, 315 (6th Cir. 2003) (holding that the testimony by counsel for defendant in drug conspiracy case that he always passed on plea offers to clients, was sufficient to support

finding, in postconviction relief proceeding, that counsel did so in the petitioner's case; in light of experience of defense counsel who had already represented five to fifteen criminal defendants in federal court at the time of trial, his habit testimony that he always passed on plea offers to clients was admissible under Federal Rule of Evidence 406 to show that he acted in conformity with that habit); *Gonzales v. Elo*, 233 F.3d 348, 356 (6th Cir. 2000) (same with respect to advising a petitioner of his right to testify); *Wimberly v. McKune*, No. 97-3133, 1998 WL 115953, at *4 (10th Cir. Mar. 16, 1998) (same).

Petitioner presented at the hearing as an intelligent individual, capable of understanding the proceedings, the questions, and subtle differences in meaning. Nonetheless, his testimony was often inconsistent and the Court did not find his testimony credible. For example, as is apparent from reading the above Background section, Petitioner, over the course of time, altered his factual allegations in state court and this Court from alleging that he did not understand his right to a jury and/or his right to make the decision regarding waiver of a jury, to alleging that he understood that in exchange for waiving a jury he would get a maximum sentence of 20 years. This detracts from Petitioner's credibility. And at points in his testimony, Petitioner appeared to say that he went along with his counsel's recommendation to waive a jury, but felt pressured by the fact that the prosecutor would seek 50 years on each count. Further, the Court notes that Petitioner did not complain about proceeding with a bench trial until after he was sentenced, and the Court finds his explanations as to why he did not do so unpersuasive.

Nor does the fact that Petitioner had not received his medication for approximately two weeks prior to trial change this conclusion. From the testimony, the Court finds that Petitioner was not impaired in any way when he discussed waiver of the right to a jury trial about two weeks prior to trial, when this Court finds the waiver occurred. Further, the Court does not find credible Petitioner's testimony that his capacity was too diminished at the time of trial, when he alleges he agreed or conceded to a bench trial. In any event, the Court finds credible Davis' testimony that he was unaware of any mental health issues or deficiencies or confusion on Petitioner's part. Absent any evidence that Davis was or should have been aware of any diminished capacity of Petitioner, he was not ineffective for accepting Petitioner's decision regarding a waiver of a jury trial.

Certainly, the better practice would have been for the trial court to have conducted a colloquy on the record to ensure that Petitioner had knowingly and voluntarily waived a jury trial, but based on the above, the Court concludes that Petitioner's waiver of the right to a jury trial was voluntary, knowing, and intelligent.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's application for a writ of habeas corpus is **DENIED**.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 27th day of September 2012.